[672 NYS2d 899]

In the Matter of ALFRED J. PARISI (Admitted as ALFRED JOSEPH PARISI), a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, May 11, 1998

## APPEARANCES OF COUNSEL

*Robert H. Straus,* Brooklyn (*Diana J. Szochet* of counsel), for petitioner.

*Ginzberg, Katsorhis & Fedrizzi,* Flushing (*Linda F. Fedrizzi* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition dated March 11, 1997, which contained 19 charges of professional misconduct against him. At the prehearing conference, the petitioner withdrew Charges Fifteen, Nineteen, and part of Seventeen. The respondent admitted the remaining factual allegations, but denied that he was guilty of any professional misconduct. After a hearing, the Special Referee sustained Charges Three through Fourteen, Sixteen, Seventeen (as amended), and Eighteen. The Special Referee did not sustain Charges One and Two. The Grievance Committee now moves to confirm the Special Referee's report insofar as it sustains Charges Three through Fourteen, Sixteen, Seventeen (as amended), and Eighteen, and to otherwise disaffirm the report. The respondent opposes the Grievance Committee's motion, arguing that all of the charges against him should be dismissed. Alternatively, the respondent argues that the sanction imposed should be limited to a letter of caution.

Charge One alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). In or about April 1995, the respondent opened an Interest on Lawyer Account (hereinafter IOLA) account (number 45043805) at Citibank. Between April 13, 1995 and May 18, 1995, the respondent was entrusted with funds as a fiduciary incident to his practice of law and deposited those funds into his Citibank IOLA account. On or about April 13, 1995, the respondent deposited $10,000 on behalf of Kyriannis and $15,000 on behalf of Chang. On or about April 18, 1995, the respondent deposited $30,200 on behalf of Graci. On or about May 4, 1995, he deposited $36,000 on behalf of Giacobbe and, on or about May 18, 1995, $33,000 on behalf of Werter. As of May 18, 1995, the respondent was required to maintain a balance of at least $122,340 in his Citibank IOLA account ($8,140 on behalf of Kyriannis, $15,000 on behalf of Chang, $30,200 on behalf of Graci, $36,000 on behalf of Giacobbe, and $33,000 on behalf of Werter). On or about May 18, 1995, the balance in the respondent's Citibank IOLA account had fallen to $78,484.23.

Charge Two alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Profes-

sional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about April 6, 1995, the respondent was entrusted with $4,000 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Grasso. Between April 6, 1995 and July 7, 1995, the respondent was required to maintain $4,000 in his Citibank IOLA account on Grasso's behalf. On or about June 26, 1995, the balance in that account had fallen to $2,920.86.

Charge Three alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about August 3, 1995, the respondent was entrusted with $3,924.16 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Acquista. Between August 3, 1995 and November 8, 1995, the respondent was required to maintain $3,924.16 in his Citibank IOLA account on Acquista's behalf. On or about August 25, 1995, the balance in that account had fallen to $3,304.46.

Charge Four alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about August 11, 1995, the respondent was entrusted with $26,500 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Artenberg. As of August 25, 1995, the respondent was required to maintain $26,500 in his Citibank IOLA account on Artenberg's behalf. On or about August 25, 1995, the balance in that account had fallen to $3,304.46.

Charge Five alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about August 28, 1995, the respondent was entrusted with $10,000 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Siegel. Between August 28, 1995 and December 19, 1995, the respondent was required to maintain $10,000 in his Citibank IOLA account on Siegel's behalf. On or about September 15, 1995, the balance in that account had fallen to $5,247.46.

Charge Six alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about October 27, 1995, the respondent was entrusted with $18,500 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Fiz. As of November

14, 1995, the respondent was required to maintain $18,500 in his Citibank IOLA account on Fiz's behalf. On or about November 14, 1995, the balance in that account had fallen to $16,411.30.

Charge Seven alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about November 1, 1995, the respondent was entrusted with $17,050 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Schor. Between November 1, 1995 and December 8, 1995, the respondent was required to maintain $17,050 in his Citibank IOLA account on Schor's behalf. On or about November 14, 1995, the balance in that account had fallen to $16,411.30.

Charge Eight alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about November 9, 1995, the respondent was entrusted with $9,000 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Giacobbe. As of January 11, 1996, the respondent was required to maintain $9,000 in his Citibank IOLA account on Giacobbe's behalf. On or about January 11, 1996, the balance in that account had fallen to $1,611.30.

Charge Nine alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about December 1, 1995, the respondent was entrusted with $3,700 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Grasso. As of January 11, 1996, the respondent was required to maintain $3,700 in his Citibank IOLA account on Grasso's behalf. On or about January 11, 1996, the balance in that account had fallen to $1,611.30.

Charge Ten alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about December 1, 1995, the respondent was entrusted with $30,000 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Rahir. As of January 11, 1996, the respondent was required to maintain at least $25,000 in his Citibank IOLA account on Rahir's behalf. On or about January 11, 1996, the balance in that account had fallen to $1,611.30.

Charge Eleven alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about January 2, 1996, the respondent was entrusted with $33,410 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Acquista. As of January 11, 1996, the respondent was required to maintain $33,410 in his Citibank IOLA account on Acquista's behalf. On or about January 11, 1996, the balance in that account had fallen to $1,611.30.

Charge Twelve alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). On or about January 3, 1996, the respondent was entrusted with $11,000 incident to his practice of law, which he deposited into his Citibank IOLA account on behalf of Sousza. As of January 11, 1996, the respondent was required to maintain $11,000 in his Citibank IOLA account on Sousza's behalf. On or about January 11, 1996, the balance in that account had fallen to $1,611.30.

Charge Thirteen alleges that the respondent commingled his personal funds with funds entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46 [a]). In or about October and November 1995, the respondent maintained an IOLA account (number 010065980) at Republic National Bank. During that period, the respondent deposited into and maintained in that account funds entrusted to him as a fiduciary, incident to his practice of law. The respondent also deposited into and maintained personal funds in that account during the same period.

Charge Fourteen alleges that the respondent commingled his personal funds with funds entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46 [a]). In or about May 1995, the respondent maintained a law office operating account (number 45043813) at Citibank. On or about May 19, 1995, the respondent deposited into that account $24,000 that was to be held in escrow on behalf of Charles Mattina.

Charge Fifteen was withdrawn by the petitioner.

Charge Sixteen alleges that the respondent engaged in a pattern and practice of failing to properly maintain the attorney escrow account funds entrusted to him as a fiduciary,

incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). Between April 1995 and April 1996, the respondent deposited into and was required to maintain in his Citibank IOLA account funds entrusted to him as a fiduciary, incident to his practice of law. During that period, the negative balances in that account were as follows:

| | | |
|---|---|---|
| a. | 06/26/95 | ($ 1,079.14) |
| b. | 07/07/95 | ($ 12,279.14) |
| c. | 07/10/95 | ($ 12,294.14) |
| d. | 07/13/95 | ($ 18,400.80) |
| e. | 07/14/95 | ($ 13,400.80) |
| f. | 07/20/95 | ($ 2,506.80) |
| g. | 07/21/95 | ($ 563.80) |
| h. | 07/27/95 | ($ 2,571.80) |
| i. | 08/03/95 | ($ 20,854.34) |
| j. | 10/27/95 | ($ 7,169.54) |
| k. | 02/05/96 | ($111,221.52) |
| l. | 02/07/96 | ($ 18,387.52) |

Charge Seventeen, as amended, alleges that the respondent failed to maintain in his attorney escrow account funds entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). Between April 1995 and April 1996, the respondent deposited into his Citibank IOLA account funds entrusted to him as an attorney incident to his practice of law. During that period, the respondent drew the following checks on his Citibank IOLA account, which were dishonored due to insufficient funds:

| | | | |
|---|---|---|---|
| check 142 | $ 4,000 | returned | 06/27/95 |
| check 172 | $29,579 | returned | 10/27/95 |
| check 193 | $26,500 | returned | 02/07/96 |

Charge Eighteen alleges that the respondent engaged in conduct involving misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]). In or about June 1995, the respondent represented Grasso in connection with the sale of his home. On or about June 29, 1995, the respondent was entrusted with a $39,000 down payment, which he deposited into his Citibank IOLA account. At the closing on or about September 22, 1995, the respondent acted as Grasso's attorney-in-fact and agreed to hold $6,343.75 of the $39,000 down payment in escrow until certain repairs were made and documented. The respondent disbursed

the entire $39,000 to his client without holding the repair funds in escrow as he had agreed.

Charge Nineteen was withdrawn by the petitioner.

In view of the respondent's admissions and the evidence adduced at the hearing, the Special Referee properly sustained Charges Three through Fourteen, Sixteen, Seventeen (as amended), and Eighteen. Moreover, the Special Referee should have also sustained Charges One and Two. Accordingly, the petitioner's motion to confirm in part and disaffirm in part the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider the mitigation and character evidence proffered by him at the hearing, including his lack of venal intent, his *pro bono* work, and the fact that he is his family's sole source of support.

The respondent's prior disciplinary history consists of a letter of admonition that was issued in September 1991 for conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

In view of the fact that the respondent is guilty of multiple acts of conversion involving large sums of money, he is disbarred for his professional misconduct.

MANGANO, P. J., BRACKEN, ROSENBLATT, O'BRIEN and LUCIANO, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the Special Referee's report is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Alfred J. Parisi, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Alfred J. Parisi is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any

advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.

Motion by the petitioner for an order adjudging the respondent in default due to his failure to submit an answer to a petition dated January 12, 1998. By decision and order of this Court dated December 19, 1997, the respondent was immediately suspended from the practice of law pursuant to 22 NYCRR 691.4 (*l*) (1) (i) based on his persistent failure to cooperate with the Grievance Committee's investigation of a complaint of professional misconduct against him, and the Grievance Committee was authorized to institute and prosecute a disciplinary proceeding against him. The issues raised by the petition were referred to the Honorable Robert T. Groh, as Special Referee, to hear and report. A petition dated January 12, 1998, was served on the respondent's counsel of record. No answer has been filed to date. The respondent was admitted to the practice of law at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on February 21, 1973, under the name Alfred Joseph Parisi.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is,

Ordered that the petitioner's motion is denied as academic.